## Hanson Estate

*Edward F. Hitchcock* and *George O. Philips*, for accountant.

*Romeika, Fish & Scheckter*, for legatee.

*Arnold M. Snyder*, for Commonwealth.

VAN RODEN, P. J., June 4, 1956.—Decedent died December 26, 1954, survived by neither spouse nor issue.

By her will decedent provided, inter alia, as follows:

"FIRST, I desire my three novels, 'From Adam Till Now', 'The Strong Come Through', and 'Haste to the Marriage Trees', to be sent to the Christopher Publishing Company of Boston, Mass., for publication. They quoted me a price of $18,000 as my share of the cost of publishing these scripts. I also want published a collection of my published short stories and plays. The royalties from these works to be given to a fund to help fight Hemophilia, from which my husband suffered."

She further provided: "Next, whatever money is left after this is done, is to be equally divided" among eight specifically named beneficiaries.

The value of decedent's net estate is approximately $15,000. The court has been requested to construe decedent's will and to adjudicate the following specific questions:

1. In view of the rejection of "From Adam Till Now" by a great many publishers, and in view of the fact that the other two novels comprise merely incomplete manuscripts, shall any sum of money be spent for publication of novels?

2. What sum of money should be devoted to publishing a collection of "published short stories and plays"?

3. As it seems unlikely that any royalties will be earned through the publication of her literary works, what amount, if any, should be used for "A fund to help fight Hemophilia"?

4. If a sum is payable to "a fund to help fight Hemophilia", then is the proper recipient of that sum the Hemophilia Foundation located at 627 Western Saving Fund Building, Philadelphia, Pa.?

From the testimony submitted at a hearing held in open court on March 12, 1956, and the other competent evidence in the case, the court finds the following facts:

Decedent was a prolific writer, but it appears that she had no success in procuring publication of any of her works on a commercial basis, except for two short stories published in the Philadelphia Public Ledger, eight "short stories" published in "Love Story" magazine, and one in "Sindicato Graphico Argentino". None of her novels or plays were ever published. Despite repeated rejection by publishers, decedent had confidence in the commercial value of her writings and desired to make a contribution to a hemophilia fund by the bequest of the anticipated royalties from such publication.

The manuscript of decedent's novel "From Adam Till Now" is in shape for publication. The Christopher Publishing House is willing to publish same upon payment of the sum of $2,250. They are willing to pay a royalty of 40 percent of the total receipts. However, it is extremely remote that there will be any sales or royalties whatsoever, inasmuch as the manuscript appears to be devoid of any literary, artistic or other merit. The other literary works specifically mentioned in decedent's will, "The Strong Come Through", and "Haste to the Marriage Trees", are not completed in proper shape for publication, and it is doubtful that same could actually be put in publishable form.

Although certain of decedent's short stories were printed in the newspaper and magazines above mentioned, it does not appear that they possess any present

or future literary value, including the probability of producing royalties or income, so as to warrant publication at this time.

It has been suggested by the accountant that decedent was entitled to a memorial of her own choice and that publication of "From Adam Till Now" would at least result in a card bearing decedent's name in the catalog index to the Library of Congress. It is true that if decedent had specified the election of a tombstone at a cost of $2,250, as suggested by counsel, the court would have honored such direction. In the instant case, however, the court is not convinced that testatrix was motivated solely by vanity in directing publication of her literary works. On the contrary, the court is of the opinion that it was decedent's intention, as expressed in her will, to provide a fund to help fight hemophilia and that she believed her charitable purpose might best be accomplished by means of royalties from the publication of her writings. It appearing to the court that decedent's charitable purpose cannot effectively be accomplished in the manner designated in the will, it is the duty of the court to adopt such alternative as will more nearly accomplish decedent's fundamental objectives.

The Hemophilia Foundation, Inc., Delaware Valley Chapter, is qualified to carry out decedent's expressed intention "to help fight hemophilia". However, it cannot carry on such fight without funds and it is so unlikely that there will be any royalties from publication of decedent's writings, to order the administratrix c. t. a. to expend the sum of $2,250 for publication of "From Adam Till Now" and to award the illusory royalties therefrom to the said Hemophilia Foundation, Inc., would be worse than an empty gesture; it would merely enrich the publisher without any resulting benefits to either the charity or decedent's memory.

The Hemophilia Foundation, Inc., has taken the

position that it was decedent's intention that the sum of $18,000 should be expended for publication of her writings and since such publication is impracticable and the balance for distribution is less than $18,000, the entire balance should be awarded unto the said charity.

The residuary legatees, on the other hand, take the position that decedent's charitable wishes were merely precatory in nature, that the charity is without any legal standing and that the impracticability of publication should result in the enhancement of the respective residuary shares.

The court cannot agree with either of such intentions. In the opinion of the court, decedent's wishes will best be carried out and her testamentary scheme will be rendered effective by awarding unto the said charity the sum of $2,250 to be used by it "to help fight hemophilia" and by awarding the balance for distribution unto the residuary legatees designated in the will in equal shares. This solution to the problem will undoubtedly result in the charity obtaining more funds for use in the fight against hemophilia than could possibly result from whatever trifling royalties, if any, from publication of "From Adam Till Now".

On the other hand, since such publication would reduce the value of the residuary shares to the extent of the publication cost of $2,250, the residuary legatees do not suffer any financial loss by the award of said sum directly to the charity rather than expending same for publication. The net result will be to carry out decedent's charitable intention more effectively than could be accomplished by her suggested scheme, and at the same time benefit the residuary legatees to the same extent, if not more fully, than intended by testatrix.

Accordingly, the balance for distribution will be so awarded.